IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BECKLEY

ENGLISH BOILER & TUBE, INC.,

    **Plaintiff,**

v.                                **Civil Action No: 5:05-0514**

MULLICAN FLOORING, L.P.,

    **Defendant/Counter-Claimant/**
    **Third Party Plaintiff,**

v.

JOHN R. ENGLISH,

    **Third Party Defendant.**

## MEMORANDUM OPINION AND ORDER

Pending before the court are John R. English's ("English")
motion to dismiss Mullican Flooring, L.P.'s ("Mullican")
counterclaim on the basis of insufficient process and
insufficient service of process (Doc. No. 17), English Boiler &
Tube, Inc.'s ("English Boiler") motion to dismiss Counts II and
III of Mullican's counterclaim for failure to state a claim upon
which relief may be granted (Doc. No. 19), and John R. English's
motion to dismiss Counts II and III of Mullican's third party
complaint for failure to state a claim upon which relief may be
granted (Doc. No. 38).

Having reviewed the record and applicable law and for the reasons outlined below, the court:

(1) **GRANTS** John R. English's motion to dismiss Mullican's counterclaim for insufficient process and insufficient service of process (Doc. No. 17).

(2) **GRANTS IN PART AND DENIES IN PART** English Boiler's motion to dismiss Mullican's counterclaim (Doc. No. 19).  As to Count II of Mullican's counterclaim, English Boiler's motion to dismiss is **GRANTED** for failure to state a claim.  As to Count III of Mullican's counterclaim, English Boiler's motion to dismiss is **DENIED.**

(3) **GRANTS IN PART AND DENIES IN PART** English's motion to dismiss Mullican's third party complaint (Doc. No. 38).  As to Count II of Mullican's third party complaint, English's motion to dismiss is **GRANTED** for failure to state a claim.  As to Count III of Mullican's third party complaint, English's motion to dismiss is **DENIED.**

## I.  Factual Allegations

English Boiler and Mullican entered into a contract of sale ("Contract") calling for English Boiler to manufacture and install a boiler system in Mullican's plant.  (Doc. No. 1-1 ¶ 5; Doc. No. 31 ¶ 5.)  English Boiler alleges that all major components of the system are installed, a contract milestone entitling English Boiler to payment of 25 percent of the Contract

2

price.[1]  (Doc. No. 1-1 ¶ 8; Doc. No. 1-2 at 35.)  On or about

_____

[1]     Section 1000.02 entitled "Payment Terms" of the Contract
provides the following:

PAYMENT TERMS

| | | |
|---|---|---|
| Payment #1 | 10% with purchase order and signed contract | |
| Payment #2 | 10% within 45 days of receipt of approved drawings from the Owner.  Drawings must be approved within 14 days of receipt by Owner. | |
| Payment #3 | 10% due within 20 calendar days after receipt of Permit to Construct from WVDEP. | |
| Payment #4 | 25% due upon delivery of all major components to jobsite by the Owner of equipment and materials under this contract. | |
| Payment #5 | 5% due at the start of installation. | |
| Payment #6 | 10% due during installation – due net upon invoice and based upon progress payments every thirty days as installation proceeds and upon approval of invoice by Bernie Long. | |
| Payment #7 | 15% due within 20 calendar days of installation completion, startup and training of the Owners['] operators. | |
| Payment #8 | 15% due upon completion of performance test and thirty (30) days of uninterruptible successful operation acceptable to the Owner of all components provided as part of this contract.  . . . .  Due net 30 days. | |

(emphasis in original).

3

June 28, 2005, English Boiler sued for breach of contract based on Mullican's alleged failure to make certain payments due under the Contract.  (Doc. No. 1-1 ¶ 14-18.)

After this court granted an extension of time, Mullican answered the complaint on August 8, 2005 and included a counterclaim against English Boiler for breach of contract (Count I), violations of the West Virginia Computer Crime and Abuse Act ("Computer Crime Act") (Count II), and trespass (Count III). (Doc. No. 12.)  Mullican's Answer also purported to assert a counterclaim against John R. English as an individual.  (<u>See</u> Doc. No. 12 ¶ 2.)

English filed a motion to dismiss Mullican's counterclaim for insufficient process.  (Doc. No. 17.)  English is not a party to the Complaint in this action and argues that Mullican must bring its claims against him in the form of a third party complaint complete with service of process under the Federal Rules of Civil Procedure.  (Doc. No. 18 at 2.)  Mullican did not oppose English's motion.  (<u>See</u> Doc. No. 23 at 1-2.)  The parties were subsequently permitted until September 30, 2005 to amend their pleadings.  (Doc. No. 26 at 1.)  By stipulated order, the parties agreed to permit Mullican to amend its answer and file and serve a third party complaint against English without obtaining leave of the court.  (Doc. No. 30.)

4

Mullican filed a third party complaint against English on October 5, 2005 asserting claims for breach of contract (Count I), violations of the Computer Crime Act (Count II), and trespass (Count III). (Doc. No. 31.) These claims are nearly identical to those asserted against English Boiler in Mullican's counterclaim. Mullican alleges that an English Boiler representative disabled the boiler's computer system ("Computer System") and destroyed software to the boiler's operation in the process. (Doc. No. 12, Counterclaim, ¶¶ 7, 11-12; Doc. No. 31, Third Party Complaint ¶¶ 7, 11-12.)

English and English Boiler moved to dismiss Mullican's claims for trespass and for violations of the West Virginia Computer Crime Act as stated in Mullican's counterclaim and third party complaint. (Doc. Nos. 19 & 38.) English and English Boiler argue that they cannot be liable under the Computer Crime Act, or for trespass, because English and English Boiler have the required authorization to access and adjust the boiler's Computer System. (Doc. No. 20 at 5.) English and English Boiler point to a Contract provision reserving a right of title and possession in the boiler to English Boiler until Mullican pays the Contract price in full. (Id. at 5-6.) English and English Boiler assert that because Mullican has not paid in full for the boiler system, title and possession remain in English Boiler's hands. (Id.) As such, English and English Boiler argue that for purposes of the

5

Computer Crime Act, they need not seek authorization from Mullican to access the boiler's computer system ("Computer System"), regardless of their purpose.  (Id.)

Mullican responds that under the "LIABILITY AGREEMENT" provision of the Contract, English Boiler bears liability for loss resulting from accidental injuries or destruction of property before the boiler installation was complete.  (Doc. No. 24 at 4.)  The "LIABILITY AGREEMENT" provision states:

> [English Boiler] shall be responsible for any loss by reason of the liability imposed upon it by law for damages: . . . because of accidental injuries to or destruction of property occurring prior to the completion of the work covered by this Contract and due to any negligent act or omission of [English Boiler] . . . .

(Doc. No. 1-2 at 40.)

Mullican argues that the Computer Crime Act and the common law of trespass to chattels are laws imposing liability on English Boiler under the "LIABILITY AGREEMENT."  Mullican argues that it is protected under the broad protection of the Computer Crime Act and that English and English Boiler exceeded the scope of their access permitted under the Contract by disabling the Computer System.  Mullican notes that the Computer Crime Act defines "owner" as "any person who owns or leases or is a licensee" of a computer system and that the Computer Crime Act extends its protection to lessors and licensees of computer systems.  (Id. at 5) (citing W. Va. Code §§ 61-3C-2(e), 61-3C-

6

3(m)).  Further, Mullican argues based on legislative findings
that the Computer Crime Act was intended to protect any
"legitimate users" of computers and computer systems, like
itself.  (Id.)  Similarly, Mullican argues that English and
English Boiler committed trespass to chattels by exceeding their
authorized access to the boiler and its Computer System.  (Doc.
No. 24 at 7.)

In their replies, English and English Boiler argue that
while they may have rendered the boiler system's Computer System
inoperable, they did not destroy property within the meaning of
the "LIABILITY AGREEMENT" provision of the Contract.  (Doc. No.
27 at 3-4; Doc. No. 44 at 3-4.)  English and English Boiler argue
that the "LIABILITY AGREEMENT" provision of the Contract applies
only to (1) destruction of property and (2) loss resulting from a
negligent act or omission.  (Doc. No. 27 at 4.)  English argues
that Mullican's pleadings fall short of alleging "destruction" of
property and that Mullican alleges intentional rather than
negligent activity.  (Id.)

## II.  Standard of Review

A motion to dismiss for failure to state a claim should not
be granted unless "it appears beyond doubt that the plaintiff can
prove no set of facts in support of his claim which would entitle
him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  In
assessing a motion to dismiss for failure to state a claim, the

7

court must accept all well-pled allegations set forth in the complaint as true and must construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff.  <u>Ibarra v. United States</u>, 120 F.3d 472, 473 (4th Cir. 1997).  "The court need not, however, accept unsupported legal conclusions, legal conclusions couched as factual allegations, or conclusory factual allegations devoid of any reference to actual events."  <u>Morgan v. Graco Children's Prods., Inc.</u>, 184 F. Supp.2d 464, 465-66 (D. Md. 2002) (citations omitted).

### III.  Analysis

The parties correctly suggest that this case turns on which entity owned the boiler at the time the Computer System was disabled.  However, title to goods passing in a contract for sale is governed by West Virginia's Uniform Commercial Code ("UCC"), which the parties do not address.

This case is governed by the UCC on sales ("Article 2")[2] because it involves the sale of goods.  <u>See</u> <u>HPS, Inc. v. All Wood Turning Corp.</u>, 204 S.E.2d 188, 323-24 (N.C. Ct. App. 1974) (applying North Carolina's UCC on sales to a contract for sale and installation of a boiler plant conversion system).  Within the meaning of Article 2, "goods" are "things . . . which are movable at the time of identification to the contract for sale . . . ."  From the text of the Contract, the court concludes

---

[2]     <u>See</u> W. Va. Code § 46-9-201 <u>et seq.</u>

that the boiler and its components were movable at the time it
was identified to the Contract.  As such, they are goods.  In
addition, the right of removal indicates that the boiler remains
movable even after installation has begun.  (<u>See</u> Doc. No. 1-2 at
43-44.)  Though ownership of the goods is governed by the UCC,
other principles of law and equity continue to apply except to
the extent that they are displaced by the UCC.  W. Va. Code § 46-
1-103.

Under Article 2, any reservation of title by a seller is
limited in effect to a reservation of a security interest
governed by the UCC on secured transactions ("Article 9").[3]
W. Va. Code § 46-2-401(1); <u>White Motor Credit Corp. v. Euclid
Nat'l Bank</u>, 1980 WL 98401, (Ohio Ct. App. April 8, 1980)(holding
that a reservation of title plus right to possession in a sales
contract created a security interest in the goods held by the
seller).  This is a mandatory rule that the parties cannot vary
in their agreement.  Title passes to the buyer when the seller
completes his performance with reference to physical delivery of
the goods.  W. Va. Code § 46-2-401(2).  Taking the pleadings in
the light most favorable to Mullican, the boiler had already been
delivered thereby completing English Boiler's performance with
regard to delivery when English and English Boiler allegedly
rendered its Computer System inoperable.  Accordingly, the

---

[3]    <u>See</u> W. Va. Code § 46-9-101 <u>et seq.</u>

9

reservation of title and right to possession provided for in the Contract operate as a security agreement and establish English Boiler's security interest in the boiler.  As a result, Mullican holds title and English Boiler holds a security interest in the boiler.

Because English Boiler holds a security interest and not title, it has remedies as a seller under Article 2 and as a secured party under Article 9.  The court notes that under Article 9, English Boiler is authorized to take possession or disable the boiler as long as it does so without causing a breach of the peace.  W. Va. Code § 46-9-609.

### A.  Mullican's Counterclaim against English

Mullican's counterclaim against English must be dismissed because English was not a party to the Complaint and claims against him are properly brought in a third party complaint requiring formal service or waiver of service under the Federal Rules of Civil Procedure.  In his motion, English pointed out that because he was not a party to the Complaint, a third party complaint was the proper method of bringing claims against English.  See Fed. R. Civ. P. 14.  Mullican did not oppose English's motion on these grounds.

The parties have since resolved these challenges by consent order (Doc. No. 30), and Mullican has filed a third party complaint against English alleging claims nearly identical to

those asserted against English Boiler (Doc. No. 31).
Accordingly, Mullican's counterclaim against English is dismissed
for insufficient process and insufficient service of process
pursuant to Federal Rule of Civil Procedure 12(b)(4) and (5).
However, the substance of its claims are preserved via the third
party complaint filed against English.

### B. Mullican's claims under the Computer Crime Act

Mullican's claims under the Computer Claims Act must be
dismissed because English Boiler was authorized under the
Contract to access the boiler including its Computer System.  The
Computer Crime Act states that a person who "knowingly, willfully
and without authorization . . . damages . . . any computer,
computer network, computer software . . . which results in a loss
of value" has committed a crime, and the statute simultaneously
provides for a private right of action for damages and other
relief.  W. Va. Code § 61-3C-7 (stating the elements of the
offense); id. § 61-3C-16 (establishing a private right of
action).  "Authorization" is defined as "express or implied
consent given by a person to another to access or use said
person's computer, computer network, computer program, computer
software, computer system . . . ."  W. Va. Code § 61-3C-3.

Although West Virginia has never squarely addressed the
question of authorization under the Computer Crime Act, the Court

11

of Appeals of Maryland construed a Maryland statute[4] similar to
West Virginia's Computer Crime Act.  That court held that the
term "without authorization" does not criminalize scenarios where
initial access to a computer system was authorized but the
accused later exceeded that authorization.  Briggs v. State, 704
A.2d 904, 480-81 (Md. 1998).  The Briggs court reasoned that the
Maryland statute omitted from its scope actions exceeding
authorization, while other state statutes and the analogous
federal statute explicitly prohibit computer use exceeding
authority.  See id. at 480-81, 481 n.8 (listing state and federal
statutes explicitly prohibiting access that exceeds
authorization).  The Briggs court concluded that because the
Maryland statute does not explicitly discuss those who exceed
their authorized access, the statute does apply to them.  Id. at
480.  Similarly, the Computer Crime Act at issue here does not
explicitly address access made in excess of initial
authorization.  Accordingly, this court finds the Briggs position
well reasoned and persuasive and applies it in this case.

    The facts according to Mullican, the nonmovant, show that
English Boiler's access was at least initially authorized.
English Boiler was installing the boiler under an agreement

---

[4]     "A person may not intentionally, willfully, and without
authorization access . . . a computer, computer network, computer
software . . . to damage, or destroy data or a computer program .
. . computer network, computer system"  Md. Code Ann. Crim. Law
§ 27-146.

allowing English boiler access to the premises and to the boiler, which includes its Computer System. (Doc. No. 1-2 Ex. A Sec. 900 - Installation) (stating that Mullican must "provide complete access to [Mullican] supplied boiler room and/or building site.")). Because English Boiler's initial access was authorized, Mullican cannot succeed on its Computer Crime Act claims.

The court finds Mullican's argument based on the "LIABILITY AGREEMENT" provision of the Contract unpersuasive and unhelpful. That provision restates rather than answers the question before the court. On a motion to dismiss, the court must evaluate whether English and English Boiler may be liable for Mullican's claims assuming Mullican proves everything it alleges. The "LIABILITY AGREEMENT" provision operates as a risk allocation provision, placing certain liability, if any, on English Boiler. The question here is not where liability falls. It is whether liability exists at all. The court looks elsewhere to determine whether English and English Boiler may be liable to Mullican.

Because the Contract authorized English Boiler's initial access to the boiler, Mullican cannot succeed on its claim for violations of the Computer Crime Act. Accordingly, Count II of Mullican's counterclaim against English Boiler and Count II of Mullican's third party complaint against English is dismissed for failure to state a claim.

13

### C. Mullican's Trespass to Chattels Claims

English and English Boiler's motions to dismiss Mullican's claims for trespass are denied because the record contains insufficient allegations and briefing to resolve the trespass issue in favor of any party.  Trespass to chattels consists of intentionally and without authorization (1) dispossessing another of the chattel or (2) using or intermeddling with the chattel in the possession of another.  <u>Yourtee v. Hubbard</u>, 196 W. Va. 683, 689, 474 S.E.2d 613, 619 (1996) (citing Restatement (Second) of Torts § 217 (1995)); <u>see also</u> <u>America Online, Inc. v. LCGM, Inc.</u>, 46 F. Supp. 2d 444 (E.D. 1998) (permitting a trespass to chattels claim against one who exceeded its authorized access to a chattel).  In this case, Mullican alleges that English and English Boiler intermeddled with the boiler without authorization.  As discussed above, the Contract authorized English Boiler's initial access to the boiler.  However, construing the facts in the light most favorable to Mullican, English and English Boiler exceeded the scope of their authorized access.

Though their actions are construed to exceed the authorization provided under the Contract, English and English Boiler's actions may be permitted under Article 9.  However, the record contains insufficient allegations and briefing to resolve this question in favor of either party because it was not pleaded

14

or briefed.   Accordingly, the court denies English and English
Boiler's motion to dismiss Mullican's trespass to chattels third
party claim and counterclaim.

### IV. Conclusion

For the reasons outlined above, English's motion to dismiss
for insufficient process and insufficient service of process
(Doc. No. 17) is granted, and English and English Boiler's
motions to dismiss for failure to state a claim (Doc. No. 19 &
38) are granted in part and denied in part.   The Clerk is
directed to send a copy of this Memorandum Opinion and Order to
all counsel of record.

It is SO ORDERED this 23rd day of March, 2006.

ENTER:

David A. Faber
Chief Judge

15